IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT FLETCHER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 7:05cv5024 |
| vs. | ) | |
| | ) | MEMORANDUM AND ORDER |
| STATE OF NEBRASKA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on the following pending motions:

(1)     filing no. 15, the Motion to Dismiss filed by defendants-Brown County Sheriff's Department, Office of Brown County Attorney, Brown County, Brown County Sheriff Steve Hapner, and Brown County Attorney David Streich (collectively "Brown County defendants");

(2)     filing no. 40, the Motion to Dismiss filed by defendant-Lenone Koenig, a former state employee;

(3)     filing no. 42, the plaintiffs' Motion for Discovery;

(4)     filing no. 44, the Motion to Dismiss filed by defendant-Cherry County;

(5)     filing no. 45, the Motion to Dismiss filed by defendant-Office of Cherry County Attorney;

(6)     filing no. 46, the Motion to Dismiss filed by defendant-Cherry County Sheriff's Department;

(7)     filing no. 47, the Motion to Dismiss filed by defendant-Cherry County Attorney Eric Scott;

(8)     filing no. 48, the Motion to Dismiss filed by defendant-Cherry County Deputy Sheriff Joe Kreycik;

(9)     filing no. 50, the Motion to Dismiss filed by defendant-Benjamin McBride, Chief of Police for the City of Valentine, Nebraska;

(10)     filing no. 52, the Motion to Dismiss filed by defendants-Doug Stanton, Monika Anderson, Prairey Walkling, State of Nebraska, and Nebraska Department of Health &

Human Services (collectively "State defendants");

(11)     filing nos. 54 and 61, the Motions to Stay filed by the State defendants;

(12)     filing no. 56, the Motion for Protective Order filed by the Brown County defendants;

(13)     filing no. 57, the Motion for Protective Order filed by defendants-Office of Cherry County Attorney, Cherry County Sheriff's Department, Cherry County Attorney Eric Scott, Cherry County Deputy Sheriff Joe Kreycik, and Cherry County (collectively "Cherry County defendants");

(14)     filing no. 58, the Motion to Strike filed by the State defendants;

(15)     filing no. 59, the Motion to Dismiss filed by the State defendants;

(16)     filing no. 63, the Objection to Motion to Compel filed by defendant-Benjamin McBride;

(17)     filing no. 65, the plaintiffs' Motion to Amend Complaint; and

(18)     filing no. 66, the plaintiffs' Motion for Summary Judgment.

As a preliminary matter, in filing no. 58, the State defendants move to strike filing nos. 52 and 54 (as well as filing nos. 53 and 55) because of a typographical error in each document. Therefore, filing no. 58 is granted, and filing nos. 52, 53, 54 and 55 are stricken at the request of the State defendants.

Also as a preliminary matter, filing no. 65, the plaintiffs' Motion to Amend the Complaint, is granted. All of the defendants' Motions to Dismiss are considered in light of the First Amended Complaint (filing no. 65-2) in lieu of the original complaint. Therefore, when, in this Memorandum and Order, a defendant is dismissed, the dismissal is because the allegations of the First Amended Complaint, rather than the original complaint, warrant dismissal. In addition, the plaintiffs' Brief in Support of Complainants' Motion for Summary Judgment (filing no. 67) clarifies, and provides details regarding, the nature and underlying factual basis of the plaintiffs' claims against the various defendants.

**The Plaintiff(s)**

Aliene Clark and Robert Fletcher, adults, bring this civil rights action on behalf of themselves, and Robert Fletcher also purports to bring this action on behalf of his minor child, Alice Fletcher, as her father, guardian and next friend. The plaintiffs' claims arise out of the defendants' investigation of charges of child abuse as to Alice Fletcher, including entry on the plaintiffs' property and inspection of the child without the father's consent. The plaintiffs seek monetary, declaratory and injunctive relief against three government entities and various public employees in their individual and official capacities.

<u>Alice Fletcher</u>

No attorney has entered an appearance on behalf of the plaintiffs, and therefore, the plaintiffs are all proceeding pro se. As a result, Alice Fletcher must be dismissed from this action without prejudice. Robert Fletcher, proceeding pro se, may not bring this case in a representative capacity for his minor child, as the law prohibits representative parties from appearing pro se on behalf of other litigants. In particular, a non-attorney parent may not appear pro se on behalf of a minor child. <u>Cheung v. Youth Orchestra Found. of Buffalo, Inc.</u>, 906 F.2d 59 (2d Cir. 1990). Accord <u>Devine v. Indian River County School Bd.</u>, 121 F.3d 576 (11th Cir. 1997), <u>cert. denied</u>, 522 U.S. 1110 (1998); <u>Johns v. County of San Diego</u>, 114 F.3d 874 (9th Cir. 1997); <u>Osei-Afriyie v. Medical College of Pa.</u>, 937 F.2d 876 (3d Cir. 1991). "Courts have a duty to enforce this rule sua sponte, as it is designed to protect the legal interests of children." <u>Wenger v. Canastota Cent. School Dist.</u>, 146 F.3d 123, 125 (2d Cir. 1998), <u>cert. denied</u>, 526 U.S. 1025 (1999).

As explained in <u>Devine v. Indian River County School Bd.</u>, 121 F.3d at 581, a plaintiff may represent himself by virtue of 28 U.S.C. § 1654. However, he may not maintain a pro

se action on behalf of his child. Thus, Alice Fletcher is dismissed as a party to the above-entitled case, and insofar as she is named as a plaintiff, her claims are dismissed without prejudice to preserve her rights until her majority or until she is properly represented.

Aliene Clark

Almost all of the defendants move to dismiss the claims of Aliene Clark because the plaintiffs' factual allegations do not indicate who Clark is[1] or how any of the defendants violated her constitutional rights. The First Amended Complaint indicates that Aliene Clark lives with Robert Fletcher, and, construed liberally, the plaintiffs' pleadings suggest that Clark may have a property interest of some kind in the premises she inhabits. The plaintiffs allege that various defendants trespassed on the property in which Robert Fletcher and Clark reside. While Fletcher was out, Clark allowed Stanton, an employee of HHS, and Hapner, the Brown County Sheriff, to examine Fletcher's minor child, Alice. Later, other acts of trespass on the property are alleged to have occurred. Although the complaint, as amended, is replete with allegations of interference with parental rights, there is no allegation that Clark has any legal right, parental or otherwise, to the care and custody of Alice Fletcher. The First Amended Complaint does allege that the "complainants," presumably including Clark, were defamed by accusations of child abuse. However, defamation is a tort claim arising under state law, not a federal constitutional issue.[2]

---

[1]Although the complaint, as amended, does not say so, one of the defendants (filing no. 51) states that Aliene Clark is Robert Fletcher's mother and Alice Fletcher's grandmother.

[2]Claims of defamation based on injury to reputation do not state a claim on which relief may be granted for deprivation of liberty or property protected by the Due Process Clause. Siegert v. Gilley, 500 U.S. 226, 229 (1991); Paul v. Davis, 424 U.S. 693, 712 (1976).

4

Thus, the only claims asserted by Clark involve trespass on property and defamation, neither of which states a constitutional claim. As no other basis of federal jurisdiction is apparent, Aliene Clark will be dismissed from this litigation as a plaintiff, and she may pursue her claims in a state court. The Clerk of Court shall modify the court's records accordingly, and the Clerk shall update the docket to reflect that this case will proceed with Robert Fletcher as the only plaintiff. From this point forward, I will refer to Mr. Fletcher as the only plaintiff.

## Discovery / Protective Orders

The Brown County defendants (filing no. 56) and the Cherry County defendants (filing no. 57) have each moved for a protective order, and the plaintiff has moved to compel discovery (filing no. 42). In addition, defendant-Benjamin McBride has filed an Objection (filing no. 63) to the plaintiff's Motion to Compel Discovery.

Filing nos. 56, 57 and 63 are granted, and filing no. 42 is denied for the following reasons. Pursuant to Fed. R. Civ. P. 26(d), the plaintiff's discovery is premature. Until the parties have conferred as provided in Fed. R. Civ. P. 26(f), they may not seek discovery.

In addition, any interrogatories, requests for admission, and requests for production of documents must be served directly on the attorney for the defendant(s) for whom the discovery requests are intended. The court becomes involved in discovery only if a dispute arises and a party files a motion, e.g., a motion to compel discovery or a motion for

---

Claims of libel and slander arise under state law and are subject to a one-year statute of limitations in Nebraska. Pursuant to Neb. Rev. Stat. § 25-208, "[t]he following actions can only be brought within the periods stated in this section: Within one year, an action for libel and slander ...." As there exists no independent basis of subject matter jurisdiction in this court for Aliene Clark's claims of trespass and defamation against Nebraska residents or governmental entities, her claims must be dismissed without prejudice.

protective order. Until then, no discovery requests should be filed with the court. In no event may a plaintiff move to compel discovery before the plaintiff has properly served discovery requests on the party from whom discovery is sought, or, if represented, on that party's attorney.

## Motions to Dismiss

State Defendants

In filing no. 59, the State defendants assert sovereign immunity and qualified immunity as grounds for dismissal of the plaintiff's claims against them. Filing no. 59 is granted for the reasons discussed below.

The Eleventh Amendment to the United States Constitution bars claims for monetary relief by private parties against a state, a state agency or an employee of a state in his or her official capacity. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). The Eleventh Amendment prevents the plaintiff from recovering damages pursuant to 42 U.S.C. § 1983 from state employees in their official capacity because a suit against a public employee in his or her official capacity is considered a suit against the public employer. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Therefore, the plaintiff's claims against government employees in their official capacity is in reality a claim against the governmental entity that employs those defendants.

Moreover, a suit may be brought under 42 U.S.C. § 1983 only against a "person" who acted under color of state law. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). However, a state, a subordinate unit of state government or a state

employee acting in an official capacity is not a "person" who may be sued under 42 U.S.C. § 1983. Hilton v. South Carolina Public Railways Com'n, 502 U.S. 197, 199-201 (1991), *citing* Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Thus, 42 U.S.C. § 1983 does not create a cause of action for damages against the State of Nebraska, the Nebraska Department of Health & Human Services ("HHS") or any state employee in the employee's official capacity.

As for any claims arising under state law, "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984) (emphasis in original). See also Becker v. University of Nebraska, 191 F.3d 904, 908 (8th Cir. 1999): "This court has previously held that the State of Nebraska has not consented to federal court jurisdiction." Accord Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 39-40 (1994): "The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." Thus, the State of Nebraska, state agencies and employees of the state in their official capacity cannot be made to answer to the plaintiff in this court for violations of state law.

Although a "person" who may be sued pursuant to 42 U.S.C. § 1983 does include a state employee in his or her *individual* capacity, Hafer v. Melo, 502 U.S. 21 (1991), such defendants may be shielded by immunities. The State defendants in their individual capacity are shielded by qualified immunity from the plaintiff's claims for damages.

"Public officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known.'" Domina v. Van Pelt, 235 F.3d 1091, 1096 (8th Cir. 2000), *citing* Harlow v. Fitzgerald, 547 U.S. 800 (1982). See also Wilson v. Layne, 526 U.S. 603, 609, 614 (1999):

> [G]overnment officials performing discretionary functions generally are granted a qualified immunity and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."...
>
> What this means in practice is that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."

(Citations omitted.) "Stated another way, qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful 'in light of clearly established law and the information [that the defendant] possessed .... The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." ' " Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000).

As explained in Hope v. Pelzer, 536 U.S. 730 (2002), a government employee charged with the federal criminal offense of willfully and under color of law depriving a person of constitutional rights, under 18 U.S.C. § 242, is entitled to "fair warning" that the conduct in question would deprive the victim of a constitutional right. Id. at 739-40. The "fair warning" requirement of 18 U.S.C. § 242 is identical to the qualified immunity standard for a civil damages action under 42 U.S.C. § 1983. Id. at 740-41. Thus, the "salient question" is whether the state of the law when the defendant acted gave the defendant "fair warning" that his or her conduct was unconstitutional. Id. at 741.

8

Thus, for a federally-protected right to be "clearly established" at the time a defendant acted, the law must be clear in regard to the official's particular actions in the particular situation. See Anderson v. Creighton, 483 U.S. 635, 639-40 (1987): "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. (citations omitted).

Qualified immunity is the norm. "[The plaintiff's] burden is not easily discharged: 'That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities.'" Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996). The first task of a "court evaluating a claim of qualified immunity" is to "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all ...." Wilson v. Layne, 526 U.S. 603, 609 (1999).

"[A] parent's interest in the custody of a child is a constitutionally protected liberty interest subject to due process protection. It is established that parents have a fundamental, constitutionally protected liberty interest in the custody of their children." Wilkinson ex rel. Wilkinson v. Russell, 182 F.3d 89, 103-04 (2d Cir. 1999), cert. denied, 528 U.S. 1155 (2000) (internal quotation marks omitted). Accord Manzano v. South Dakota Dept. of Social Services, 60 F.3d 505, 509 (8th Cir. 1995): "Our court has recognized the liberty interest which parents have in the care, custody, and management of their children." Thus, "[i]t is clearly established that the Constitution recognizes both

9

a protectible procedural due process interest in parenting a child and a substantive fundamental right to raise one's child."  Bartell v. Lohiser, 215 F.3d 550, 557 (6th Cir. 2000).

However, the right to family integrity, that is, parents' right to the care, custody and management of their children, is not absolute and is limited by the compelling governmental interest in the protection of minor children.  Manzano v. South Dakota Dept. of Social Services, 60 F.3d 505, 509-510 (8th Cir. 1995).  See also Hatch v. Department for Children, Youth and Their Families, 274 F.3d 12 (1st Cir. 2001):

> In this vein, the law recognizes that the protection afforded to the parents' interest must be balanced against other valid interests, particularly the best interests of the child and the interest of society in the maturation of children as future citizens .... Thus, the state may freely investigate allegations of child abuse ... and if, as a result, it develops clear and convincing evidence of parental unfitness, it may move to terminate the relationship between parent and child .... As an interim measure, the state may separate the child from the parent, prior to a hearing, for cause shown.

Id. at 20-21.

> Indeed, evidence of even a single instance of abuse may constitute an exigent circumstance sufficient to warrant immediate state action on a child's behalf .... [T]he Constitution allows a case worker to take temporary custody of a child, without a hearing, when the case worker has a reasonable suspicion that child abuse has occurred (or, alternatively, that a threat of abuse is imminent).  It follows, therefore, that a parent's right to the care, custody, and control of a minor child is inviolate unless a case worker has such a suspicion.

Id. at 21-22. Consequently, the right to family integrity has been characterized by the First Circuit in Hatch, as "a parent's right to custody *in the absence of a case worker's reasonable suspicion of child abuse*." Id. (Emphasis added.)

Thus, whatever rights the plaintiff has to be free from an alleged unreasonably-conducted investigation into suspected child abuse, such rights are not clearly established.

10

As the Second Circuit remarked in the context of an allegedly defective investigation into possible parental child abuse: "[T]he extent of a parent's constitutional protection in the abuse investigation context has been the subject of considerable uncertainty and confusion." Wilkinson v. Russell, 182 F.3d 89, 103 n. 7 (2d Cir. 1999), cert. denied, 528 U.S. 1155 (2000). The need to balance these competing interests to determine the legality of the investigators' conduct usually means that the parents' asserted right cannot be considered clearly established in the context of a child abuse investigation. See, e.g., Foy v. Holston, 94 F.3d at 1535 n.8: "When the law contemplates some kind of balancing test to determine the ultimate question of lawfulness or unlawfulness of an act, qualified immunity almost always applies to shield the public servant defendant; the lack of bright lines associated with balancing tests prevents the preexisting law, given the circumstances of a specific case, from having been clearly established when the public servant took the step that resulted in his later being a defendant in a lawsuit."

As child abuse investigations take place in an area of considerable uncertainty in which governing legal principles can rarely be considered clearly established in the abstract, the state defendants are shielded by qualified immunity from the plaintiff's claims for damages against them in their individual capacity. See, e.g., Foy v. Holston, 94 F.3d at 1537: "[S]tate officials who act to investigate or to protect children where there are allegations of abuse almost never act within the contours of 'clearly established law.'" In addition, failure to follow state procedures need not deprive an official of qualified immunity. See Davis v. Scherer, 468 U.S. 183, 194 (1984) (officials "do not lose their qualified immunity merely because their conduct violates some [state] statutory or administrative provision").

11

Qualified immunity does not foreclose a plaintiff's request for injunctive relief. However, the liberty and property interests protected by the Due Process Clause do not include a constitutional right to be free from child abuse investigations. Omni Behavioral Health v. Miller, 285 F.3d 646, 650-54 (8th Cir. 2002). Accord Manzano v. South Dakota Dept. of Social Services, 60 F.3d 505, 510 (8th Cir. 1995).

In light of the foregoing principles, filing no. 59, the Motion to Dismiss filed by the State defendants, is granted. In light of the dismissal of the State defendants, filing no. 61, the Motion to Stay filed by the State defendants, is granted retroactively.

All of the foregoing principles apply to Lenone Koenig, a former state employee. In addition, in filing no. 40 and supporting documents, Ms. Koenig moves to be dismissed from this action, in her individual capacity, for insufficiency of service of process. Koenig served as a Protection and Safety Supervisor for the Nebraska Department of Health & Human Services ("HHS") until she left her employment on March 31, 2005. The plaintiff attempted to serve her with process, in her individual capacity, by sending a summons and complaint by certified mail to the Norfolk, Nebraska office of HHS on or about November 30, 2005. An employee of the office signed for the certified mail but without any actual authority to act as an agent for Koenig to accept a summons on her behalf. See filing no. 41, the Affidavit of Vicki Viox of HHS. In light of the uncontroverted evidence of insufficiency of service, filing no. 40 is granted, and Lenone Koenig, in her individual capacity, is dismissed from this litigation.

Valentine Chief of Police Benjamin McBride

In filing no. 50, Benjamin McBride, Chief of Police of the City of Valentine, Nebraska, moves for dismissal of the claims against him in his official and individual

capacities.  Filing no. 50 is granted.

As stated above, a suit against a public employee in his or her official capacity is actually a suit against the public employer.  Kentucky v. Graham, 473 U.S. 159, 165 (1985).  Therefore, a civil rights claim against Chief McBride, in his official capacity, is in reality a claim against the City of Valentine, as the entity that employs him.  See also Eagle v. Morgan, 88 F.3d 620, 629 n. 5 (8th Cir. 1996), *quoting* Kentucky v. Graham: "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."

There can be no imputed or vicarious liability founded on 42 U.S.C. § 1983. A municipal entity may not be held liable on principles of respondeat superior for constitutional injuries allegedly inflicted by other persons.  See, e.g., Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001), *citing* Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 405 (1997) and City of Canton v. Harris, 489 U.S. 378, 385 (1989).

"A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a "custom or usage"' with the force of law.'"  Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2003).  See also Turney v. Waterbury, 375 F.3d 756, 761-62 (8th Cir. 2004) (citation omitted):  "'In a section 1983 action, a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality.'..."  The plaintiff has not alleged that any policy or custom of the City of Valentine, Nebraska constituted the moving force behind a constitutional injury inflicted on him.  Therefore, the plaintiff's claims against Benjamin McBride, in McBride's official capacity, must be

13

dismissed.

In his individual capacity, McBride is shielded by qualified immunity from the plaintiff's claims for damages for the same reasons as the State defendants. The only allegation against McBride is that he created a diversion on September 16, 2005, at the plaintiff's place of business by purporting to investigate the plaintiff's prior complaints of vandalism. Instead, McBride allegedly assisted child welfare investigators who were attempting to gain access to "baby Alice" to assess Alice's condition after her mother had reported incidents of child abuse at the hands of Alice's father, the plaintiff in this case.

In addition, the only action actually taken by McBride, besides the alleged "conspiracy" to assist child welfare investigators by occupying the plaintiff's attention, was to trespass on the plaintiff's business property, at most a tort under state law. As previously explained, allegations of trespass on private property fail to state a claim on which relief may be granted under the Constitution and laws of the United States.

Brown and Cherry Counties

I have partially granted the Motions to Dismiss filed by the County defendants in dismissing plaintiffs-Alice Fletcher and Aliene Clark from this litigation for the reasons previously stated. In addition, Brown County, Cherry County and the officers and employees of those Counties, in their official capacity, correctly state that the plaintiff has failed to state a claim on which relief may be granted regarding municipal, i.e., county liability. As discussed above, county liability, like city liability, must be based on a governmental policy or custom constituting the moving force behind a constitutional injury to the plaintiff.

The same principles discussed with respect to the City of Valentine, Nebraska,

apply to Brown and Cherry Counties.  There can be no imputed or vicarious liability premised on the federal civil rights laws.  County liability must be founded on an identified official policy of the County or a widespread "custom or usage" with the force of law which proximately caused constitutional injury to the plaintiff.  The plaintiff identifies no such policy or custom and therefore fails to state a claim on which relief may be granted as to either County or as to any County employee or officer in an official capacity.

However, a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests only the legal sufficiency of the plaintiff's complaint if the factual allegations in the complaint are accepted as true.  Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 651 (8th Cir. 1998).  See also Browning v. Clinton, 292 F.3d 235, 241-42 (D.C. Cir. 2002): "[W]e accept the plaintiff's factual allegations as true and construe the complaint 'liberally,' 'grant[ing] plaintiff[ ] the benefit of all inferences that can be derived from the facts alleged,' .... At the Rule 12(b)(6) stage, we do not assess 'the truth of what is asserted or determin[e] whether a plaintiff has any evidence to back up what is in the complaint.'"  (Citations omitted.)  Thus, a claim should be liberally construed in the light most favorable to the plaintiff and should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).

Unlike the insuperable obstacle of state sovereign immunity which precludes the plaintiff from further litigation against the State of Nebraska, its agencies and official-capacity employees, the plaintiff may be able to state a claim on which relief may be granted against either or both of the Counties and the County employees if given an

opportunity to file a Second Amended Complaint.[3] Therefore, the plaintiff will be permitted to file a Second Amended Complaint by June 30, 2006, in the absence of which the claims against the County defendants will be dismissed. Filing nos. 15 and 44 are granted in part and denied in part accordingly.

**Other Issues**

Consolidation of County Units

The Brown County defendants correctly point out that the "Office of Brown County Attorney" and the "Brown County Sheriff's Department" are merely units within Brown County, Nebraska, and those units lack the legal capacity to sue or be sued in their own names. As the defendants note, subordinate units of a county cannot serve as separate defendants in litigation.

Construing the complaint liberally, the intended defendant in each instance is Brown County, Nebraska, and the "Office of Brown County Attorney" and the "Brown County Sheriff's Department" must be terminated as independent defendants separate from Brown County. Filing no. 15 is granted in that respect. The Cherry County defendants make the identical argument. For the same reasons, the "Office of Cherry County Attorney" and the "Cherry County Sheriff's Department" are terminated as defendants separate from Cherry County in this litigation.[4] Thus, filing nos. 45 and 46 are granted accordingly.

---

[3]For example, unlike the State defendants, the record does not clearly delineate the circumstances giving rise to the County defendants' involvement in the child abuse investigation regarding Alice Fletcher.

[4]As opposed to the "*offices* of County Attorney," the *persons* serving as County Attorney, i.e, Brown County Attorney David Streich and Cherry County Attorney Eric Scott remain defendants in this case in their individual and official capacities.

16

Brown County Tort Litigation

The Brown County defendants rely on preclusion doctrines of res judicata and/or collateral estoppel by virtue of a lawsuit by the plaintiff against some of the same defendants in the Brown County District Court. While the state court entered summary judgment against the plaintiff, the defendants indicate that the case remains pending on appeal. Thus, there is as yet no final judgment.

Issue and claim preclusion require a final judgment. Collateral estoppel, for example, means that when an issue of ultimate fact has been determined by a final judgment, that issue cannot again be litigated between the same parties in a subsequent lawsuit. Four conditions must exist for the doctrine of collateral estoppel to apply: (1) The identical issue was decided in a prior action, (2) there was a **final** judgment on the merits, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. Farm Credit Bank of Omaha v. Stute, 537 N.W.2d 496, 497 (Neb. 1995) (emphasis added). Similarly, "[t]he doctrine of res judicata, or claim preclusion, bars the relitigation of a matter that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a **final** judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions." Eicher v. Mid America Financial Inv. Corp., 702 N.W.2d 792, 809 (Neb. 2005) (emphasis added).

David Streich, Steve Hapner, Eric Scott, Joe Kreycik

Brown County defendants-David Streich and Steve Hapner and Cherry County defendants-Eric Scott and Joe Kreycik allege that the plaintiff has failed to state a claim

17

against them on which relief may be granted or, alternatively, that they are entitled to qualified immunity insofar as they may have participated in the child abuse investigation as to Alice Fletcher. Because I am granting the plaintiff leave to file a Second Amended Complaint against Brown and Cherry Counties, I will permit him to amend his allegations as to Streich, Hapner, Scott and Kreycik also. As for the claims of those defendants to qualified immunity, the authority of those officials to participate in the State's investigation of child abuse as to Alice Fletcher is not clear from the record and may have to be presented in the context of a summary judgment motion. Filing nos. 15, 47 and 48 are denied at this time, without prejudice to reassertion of similar issues on a factual record.

THEREFORE, IT IS ORDERED:

1. *Plaintiffs:* Plaintiffs-Alice Fletcher and Aliene Clark are dismissed without prejudice from this litigation, and the Clerk of Court shall modify the court's records to reflect that the only remaining plaintiff in this action is Robert Fletcher;

2. *Discovery:* Filing nos. 56 and 57 (Motions for Protective Order) and filing no. 63 (Objection to Motion to Compel) are granted, and filing no. 42 (Motion to Compel) is denied;

3. *Strike:* Filing no. 58 (Motion to Strike) is granted, and filing nos. 52, 53, 54 and 55 are stricken at the request of the State defendants;

4. *Amend:* Filing no. 65, the plaintiff's Motion to Amend, is granted, and the First Amended Complaint is accepted for filing instanter; all of the defendants' Motions to Dismiss have been considered in light of the First Amended Complaint (filing no. 65-2) in lieu of the original complaint;

5. *State Defendants*: Filing no. 59, the Motion to Dismiss filed by the State

defendants, is granted; the State defendants (i.e., Doug Stanton, Monika Anderson, Prairey Walkling, State of Nebraska, and Nebraska Department of Health & Human Services) are dismissed from this litigation; in light of the dismissal of the State defendants, filing no. 61, the Motion to Stay filed by the State defendants, is granted retroactively; filing no. 40, the Motion to Dismiss filed by Lenone Koenig, a former state employee, is granted on the additional basis of insufficient service of process;

  6. *City Police Chief*:  Filing no. 50, the Motion to Dismiss filed by Benjamin McBride, Chief of Police for the City of Valentine, Nebraska, is granted;

  7. *Subordinate Units of Cherry County:* Filing nos. 45 and 46 are granted, and the "*Office* of Cherry County Attorney" and the "Cherry County Sheriff's *Department*" are terminated as separate defendants; those entities are component units of Cherry County, Nebraska;

  8. *Counties and Officials:* Filing no. 15, the Motion to Dismiss filed by the Brown County defendants, and filing no. 44, the Motion to Dismiss filed by Cherry County, are granted in part and denied in part as follows:

  a. The remaining plaintiff, Robert Fletcher, has failed to state a claim for relief based on a county policy or custom as the proximate cause of a constitutional injury to the plaintiff;

  b. The plaintiff is granted until June 30, 2006 to file a Second Amended Complaint against the County defendants; in the absence of a timely and sufficient Second Amended Complaint, the claims against the Brown County defendants and the Cherry County defendants may be subject, without further notice, to dismissal without prejudice;

    c.    Because the plaintiff has been granted leave to file a Second Amended Complaint, filing no. 15 is denied as to Brown County defendants-David Streich and Steve Hapner, without prejudice to reassertion in an appropriate form after the plaintiff files a Second Amended Complaint; filing nos. 47 and 48, the Motions to Dismiss filed by Cherry County officials Scott and Kreycik, are denied on the same terms for the same reasons, subject to a timely and sufficient Second Amended Complaint;

    9.    *Summary Judgment*:    Filing no. 66, the plaintiff's Motion for Summary Judgment, is denied; and

    10.    *Interlocutory Order:*    Pursuant to Fed. R. Civ. P. 54(b), this decision is not a final and appealable order until after entry of judgment adjudicating all the claims and rights of the parties; nor will the court certify the order for interlocutory appeal.

DATED this 24th day of May, 2006.

                  BY THE COURT:

                  s/Joseph F. Bataillon
                  JOSEPH F. BATAILLON
                  Chief District Judge